UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

GREG RULEY,

    Plaintiff,

vs.

RANDALL STOVALL,

    Defendant.

Civil Action No. 10-CV-142-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Greg Ruley, proceeding without counsel, filed a civil rights action under 42 U.S.C. § 1983. [R. 2] Defendant Randall Stovall has filed a motion for summary judgment [R. 27] to which Able has responded. [R. 29] This matter is therefore ripe for determination.

**I**

In his complaint, Ruley alleges that on July 29, 2010, while incarcerated at the Otter Creek Correctional Complex ("OCCC"), warden Stovall confiscated his Satanic Bible and another religious book in his possession. [R. 2 at 2] In response to his grievances, he was advised that Satanism is not considered a "religion" under regulations established by the Kentucky Department of Corrections ("KDOC"), and that he would not be allowed to possess these materials. [R. 2-2 at 2] Ruley contends that this has interfered with his ability to practice his religion in violation of the First Amendment, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"), and several sections of the Kentucky Constitution. [R. 2 at 3]

In his motion for summary judgment, Stovall notes that following the Supreme Court's decision in *Cutter v. Wilkinson*, 544 U.S. 709 (2005), KDOC reviewed its practices and procedures

and through regulation created its Religion Reference Manual which sets forth an extensive list of permissible religious practices. [R. 27-6, Affidavit of Jim Erwin, at 1] KDOC implemented the Manual through Kentucky Corrections Policies and Procedures ("CPP") 23.1. [R. 27-2, Affidavit of Bobby Isaac, at 1-2] Accordingly, Darrell Neace of KDOC, advised prison officers at OCCC that Satanism materials were not permitted under the Manual, and that they should remove any materials about Satanism from Ruley's possession.[1] [R. 27-1 at 3]

Stovall argues that Kentucky law and KDOC regulations place certain restrictions upon religious activities in prison, and that his actions were taken not only in conformity with those rules, but also at the specific direction of KDOC Contract Monitor Darrell Neace. [R. 27-1 at 6-8] He further contends that the confiscation of Ruley's Satanic Bible did not violate his constitutional right to religious expression under the First Amendment, nor does it violate RLUIPA. [R. 27-1 at 8-10] Finally, Stovall contends that he is entitled to qualified immunity or, in the alternative, to a good faith defense. [R. 27-1 at 11]

## II

A motion under Rule 56 challenges the viability of the another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law, she is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need her own evidence to support this assertion, but need only

---

[1] OCCC is a privately-run facility operated by the Corrections Corporation of America through contract with KDOC. [R. 27-1 at 2]

point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

While Ruley's complaint contends that the confiscation of his religious materials violates numerous provisions of the federal Constitution, his arguments are focused solely upon his free exercise claims under the First Amendment. In addition, because Ruley's claims are specifically governed by the First Amendment, his attempts to invoke other constitutional provisions such as the Fourth or Eighth Amendments necessarily fail. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (where "a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that

specific provision ...") The Court will therefore address his constitutional challenge solely under the First Amendment.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. Prisoners retain the right to the free exercise of their religion. *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985). But because "the circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs," when addressing a challenge to a prison regulation impacting religious expression a court must "balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons." *Id*.

If a prison regulation substantially infringes on an inmate's First Amendment rights, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine the reasonableness of a prison regulation, the court considers several factors. First, there must be a rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Second, whether the regulation leaves open alternative means for prisoners to exercise their religious beliefs is relevant. Third, the court must account for the impact that permitting the prisoner to exercise his religious beliefs would have upon the rights of prison guards and other inmates and upon the allocation of scarce prison resources. Finally, a regulation is more likely reasonable if there are no other plausible alternative means to achieve its objectives. *Id*.

The Court does not draw upon a clean slate when reviewing the application of these principles to a prisoner's claim that he is entitled to possess the Satanic Bible. In *Carpenter v. Wilkinson*, 946 F. Supp. 544 (N.D. Ohio 1996), the court analyzed the *Turner* factors at length and concluded that a prison regulation prohibiting possession of the Satanic Bible was constitutionally

permissible. The court assumed both that the prisoner's beliefs were legitimately held, and that the tenets of Satanism were religious in nature. *Id.* at 525, 527-28. However, the court noted that "large portions of the Satanic Bible ... advocates preying on the weak in any way possible for one's own gratification - clearly an extremely dangerous 'teaching' where the weak have fewer avoidance strategies at their disposal." *Carpenter*, 946 F. Supp. at 529. Because this could "foment[] trouble of all kinds in a prison setting, leading to difficulty in maintaining security and order and in delivering rehabilitative services in the prisons," the Court found that there are legitimate penalogical interests in preventing a prisoner from possessing such a book. *Id.* at 530.

In the years since it was decided, numerous courts have drawn upon *Carpenter*'s analysis and reached the same conclusion. *Cf. Burton v. Frank*, 2004 WL 1176171, at *4 (W.D. Wis. 2004) (Satanic Bible "advocates the murder of 'totally obnoxious and deserving individuals,' exaction of vengeance through violence, mutilation and murder of anyone a Satanist believes to be his enemy and annihilation of the 'festering fragments of the body of he who would detain me [,]' " and "challenges its readers to rebel against the law of man and engage in symbolic acts of violence against one's enemies"); *Winford v. Frank*, 2008 WL 359728, at *3 (E.D. Wis. 2008) (Satanic Bible "preaches self-indulgence, self-gratification and vengeance ... [and] also advocates that the weak are here to serve the strong, that believers should rebel against the laws of man and hate authority, and that bodily impulses are to be pursued regardless of the consequences"). *Johnson v. Williams*, 2011 WL 6778711 (D. Or. 2011) (prohibition on Satanic Bible is rationally related to prison objectives of safety and security, does not bar other methods of religious expression, and is the only plausible method to obtain its objectives). The Court agrees with these conclusions and finds them equally applicable to the facts presented here. *Doty v. Lewis*, 995 F. Supp. 1081, 1086-87 (D. Ariz.1998) (because "a prison creates a haven for the strong to harm, imperil and manipulate the lives of the

weak," the Satanic Bible, which "advocates hurting someone who, in the opinion of the Satanist, deserves to be harmed and destroyed," creates a danger to the safety of the prison; prisoner failed to demonstrate that ban on the Satanic Bible was not reasonably related to legitimate penalogical interests). Accordingly, Ruley's claim under the First Amendment fails as a matter of law, and summary judgment will be granted with respect to it.

Under RLUIPA, Congress provided that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Through the enactment of RLUIPA, Congress sought to legislatively overrule the Supreme Court's decision in *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990), providing greater statutory protection for religious expression in the prison context than that constitutionally required.

Under the statute, the prisoner bears the initial burden of demonstrating that a prison rule substantially burdens the exercise of his religious beliefs. If it does, the prison may establish the rule's legitimacy by demonstrating that it is designed to promote a compelling government interest in the least restrictive means reasonably available. *Cf. Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). Avoiding an in-depth examination of the particulars of Satanism and its tenets, the Court assumes without deciding that not having a copy of the Satanic Bible presents a practical and substantial burden on an adherent's actual practice of those tenets of his belief, although Ruley has not explained how this is so.

The Court concludes, however, that Stovall's confiscation of the Satanic Bible in conformity with KDOC's rules and at the express direction of Neace satisfies RLUIPA's requirements that this action was both in furtherance of a compelling government interest and was the least restrictive means of doing so. As the Supreme Court has noted, "[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722. There is no question that a prison's interest in maintaining institutional safety and security constitutes a compelling governmental interest. *Hoevenaar v. Lazaroff*, 422 F.3d 366, 369-70 (6th Cir. 2005); *Gooden v. Crain*, 353 F. App'x 885 (5th Cir. 2009); *Koger v. Bryan*, 523 F.3d 789, (7th Cir. 2008). And because the teachings of the Satanic Bible actively promote acting on impulse, assertive disrespect for authority, and immediate and aggressive violence towards any person opposing the desires of its adherents or deemed unworthy, *Carpenter*, 946 F. Supp. at 527-29, the Court cannot conceive nor has Ruley suggested any plausible alternative means to promote the institution's interest in safety and security short of prohibiting the possession of such inciteful materials. *Id.* at 530; *Johnson*, 2011 WL 6778711, at *11 ("preventing access to the book is the least restrictive means to meet that interest because it is the material contained in the book itself that creates the risks ..."); *Hendrickson v. Caruso*, 2008 WL 623788, at *6-7 (W.D. Mich. 2008) (exclusion of Satanic Bible was the least restrictive means to further prison's interest in safety, security, and rehabilitation).

Stovall further asserts that, even if this were not so, he is entitled to qualified immunity. As a threshold matter, while Stovall was the warden of a privately-run facility, he may still assert qualified immunity - a defense typically available only to state actors - under *Richardson v. McKnight*, 521 U.S. 399, 410-13 (1997). Not only is OCCC generally subject to contractual and regulatory oversight and supervision by the Commonwealth of Kentucky, but Stovall's action in

confiscating Ruley's Satanic Bible was expressly ordered by KDOC through Neace. [R. 27-5 at 2] The precise action at issue in this suit was therefore the direct result of state action, and qualified immunity should be available to the individual who carried it out at the state's direction. As the Sixth Circuit has explained, "private parties that perform fundamentally public functions, or who jointly participate with a state to engage in concerted activity, are regarded as acting 'under the color of state law' for the purposes of § 1983." *Bartell v. Lohiser*, 215 F.3d 550, 556 (6th Cir. 2000). In particular, the Sixth Circuit noted that the Supreme Court's denial of the availability of the qualified immunity defense to guards in a privately-run prison was heavily dependent upon the fact that their actions were undertaken with singularly "limited direct supervision by the government." *Richardson*, 521 U.S. at 413. In *Bartell*, the Sixth Circuit noted that the defendants were closely supervised by a state agency, and therefore were entitled to assert the defense. *Bartell*, 215 F.3d at 557. Here, Stovall was not merely supervised with respect to his actions at issue here, he was directly told what to do by state officials. [R. 27-5 ("Please have these items confiscated and proper paperwork completed for mail out purposes.")] Stovall is therefore entitled to assert a qualified immunity defense.

      The Court further concludes that Stovall is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As the Supreme Court explained in *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), "[b]ecause the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even

the burdens of litigation." As the authorities previously cited establish that the right which Ruley contends Stovall disregarded does not exist, and it therefore certainly could not have been "clearly established." *See Hendrickson*, 2008 WL 623788, at *8-9 (prisoner had no "clearly established" constitutional right to possess a Satanic Bible, entitling defendant to qualified immunity). Even where judges are in disagreement about what the law requires, it is unfair to subject a state official to damages "for picking the losing side in the controversy." *Pearson*, 555 U.S. at 245. Stovall is therefore alternatively entitled to qualified immunity, and the claims against him will be dismissed.

Finally, in his complaint Ruley also asserted that Stovall's actions violated various sections of the Kentucky Constitution. However, because the Court has determined that his federal claims must be dismissed, Ruley's pendent state law claims will be dismissed without prejudice. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

Accordingly, it is **ORDERED** that:

1. Defendant's motion to dismiss, or in the alternative for summary judgment [R. 27] is **GRANTED.**

2. Ruley's claims under the Kentucky Constitution are **DISMISSED WITHOUT PREJUDICE**; in all other respects, his Complaint [R. 2] is **DISMISSED WITH PREJUDICE**.

3. The Court will enter an appropriate Judgment.

Dated this 27th day of March, 2012.



Signed By:
*Karen K. Caldwell*
**United States District Judge**